148

SHALLAT, Appellant, v. GLANDER, Appellee.

Board of Tax Appeals.

No. 11872.  Decided February 11, 1947.

ENTRY

This cause came on to be heard upon an appeal from an admissions tax assessment made against the appellant by the tax commissioner for the years 1945 and 1946 in the sum of $60.82, including interest, from the time the tax became due to the date of the final assessment.  This cause was heard and submitted upon the transcript of the proceedings before the tax commissioner, the evidence and briefs of counsel.

The appellant promotes boxing exhibitions on behalf of himself and two athletic clubs.  He admits that he is the one

who is liable for any assessment that may be legally due on admissions charged for such shows. There is no dispute as to the gross amount appellant received for such admissions. It appears that the Federal, State and City (Cincinnati) taxes were set forth on the admission tickets separately from what he calls the established price. The State admissions tax was paid not on the gross amount he received, but on this so-called established price. For instance, if that price was $2.00 per ticket he would set forth thereon separately $2.00 plus 40c for Federal tax, 6c for State tax and 10c for city tax, making a total amount of $2.56 for such ticket; and he would compute and make return of the State admissions tax at 3% of $2.00. The taxes for the period involved were paid to the State in accordance with this computation. The assessment herein complained of resulted from the tax commissioner in following his Rule 151 and computing the assessment on the gross amount received for admissions less only the amount of Federal tax paid. Rule 151 reads as follows:

"The basis for the computation of the Ohio Admissions Tax is the total amount received by any person receiving 'Admissions' in payment for such admissions less the amount separately collected for the Federal Government. No other deductions from amounts received are allowable, regardless of the fact that signs or tickets might separately state the amount of the total charge to be paid to the State as tax."

Formerly the admissions tax was assessed against the person paying for the admission and it was the duty of the person receiving the admission price to collect the tax from the person paying the same in addition to the admission price. Sec. 5544-2 GC, formerly levied

" a tax of one cent for each ten cents or fraction thereof on the amount paid for admission to any place, including admission by season ticket or subscription, to be paid by the person paying for such admission * * *."

Sec. 5544-5 GC, provided in part as follows:

"Every person receiving any payments for admissions, taxable under this act, shall collect the amount of the tax imposed hereby from the person making such payments."

Sec. 5544-6 GC, read in part as follows:

"Every person required by this act to collect and pay the taxes imposed hereby shall keep such records * * *."

Sec. 5544-2 GC, in its present form and as it existed during the period involved, levies the tax as follows:

"A tax of three percentum on the amounts received for admission to any place, including admission by season ticket or subscription.

"A tax of three percentum on the excess of amounts received for tickets or cards of admission to theatres, operas, and other places of amusement, sold at news stands, hotels, and places other than the ticket offices of such theaters, operas, or other places of amusement, over and above the amounts representing the established price therefor at such ticket offices; such tax to be returned and paid in the manner and subject to the interest provided in §5544-5 GC, by the person selling such tickets.

"A tax of three per centum on the amount received for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment in case the charge for admission is in the form of a service charge, or cover charge, or other similar charge.

"A tax of three per centum on the amount received as annual membership dues by every club or organization maintaining a golf course, and a tax of three percentum on green fees collected by golf courses either under club or private ownership."

Likewise, §5544-5 GC, was changed to read as follows:

"Every person receiving any payments for admission, dues or fees, taxable under this act, shall on or before the tenth day of each calendar month make a return in duplicate under oath, to the commission (commissioner) in such form as the commission may prescribe, showing the number of taxable admissions issued or disposed of and/or the amount of taxable dues and/or fees collected during the preceding calendar month, the amount of tax hereby imposed on the same, and such other facts and information as the commission may require in the form of returns prescribed by it; one copy of such return shall be for the use of the commission and the other shall be filed by the commissioner in the office of the auditor of state.

"Each person making such return shall at the time of making the same pay the amount of taxes shown thereby to

the treasurer of state. Such payments into the state treasury shall be made in the manner prescribed by §248 GC. The commission may adopt uniform rules and regulations not inconsistent with this section governing the method of making returns and payments.

"If the tax imposed by this act is not paid when due, there shall be added as a part of the tax interest at the rate of one percentum a month from the time when the tax became due until paid."

Sec. 5544-6 GC, provides in part as follows:

"Each person required by this act to collect and pay, or to pay-the taxes imposed hereby shall keep such records of receipts, issuance of complimentary tickets, and otherwise, together with ticket stubs, and other pertinent documents, in such form as the commission may by such regulation require."

It is clearly seen that the admissions tax now is purely a gross receipts tax to be paid by the person receiving the admission price. This is apparent from the changes made in the above statutes. Surely some effect must be given to these changes. As stated in **Lytle v Baldinger, 84 Oh St 1, 95 N. E. 389.**

"The presumption is, that every amendment of a statute is made to effect some purpose."

The following is held in the case of **Board of Education v Boehm, 102 Oh St 292, 131 N. E. 812:**

"When an existing statute is repealed and a new and different statute upon the same subject is enacted, it is presumed that the legislature intended to change the effect and operation of the law to the extent of the change in the language thereof."

There is now no provision for charging the tax to the person paying for an admission or requiring or authorizing the person charging for the admission to collect the tax from the person paying the same. The tax which is levied on admissions is against the person receiving the payment therefor. The only way this tax can be passed on to the person paying for the admission is by an increase in the admissions price; in which event the tax would be levied upon the increased amount received. The fact that this increased price is set forth

in separate items on admission tickets cannot change the form or character of the tax, which is purely a gross receipts tax.

It is apparently contended by appellant that since **subparagraph 2** of §5544-2, **GC,** mentions the term "established price" and provides for an additional tax on any excess that may be charged above that amount, the appellant may set an established price and collect taxes thereon from the person paying for the admission. "Established price", as used in this statute, simply means the amount appellant receives at his place of amusement for tickets and provides for a tax on any excess over that amount which may be charged for tickets at places other than the ticket office of such place of amusement. In the case of Lash's Products Company v United States, 278 U. S. 175, 73 L. ed. 251, the following was held:

"The tax imposed by section 628 of the Revenue Act of 1918 on the price for which soft drinks were sold by the manufacturer is to be computed upon the price received, including the amount of the tax, if it is passed on to the buyer, and the sales price is increased to cover the tax, and the tax is not billed as a separate item."

Of course, in that case the tax was not billed as a separate item; but, commenting on the regulation of the Commissioner of Internal Revenue allowing the deduction from the gross amount received where the tax is separately stated, the Court said:

"The petitioner supports its position by a regulation of the commissioner that when the tax is billed as a separate item it is not to be considered as an increase in the sale price. Naturally a delicate treatment of a tax on sales might seek to avoid adding a tax on the amount of the tax. But it is no less natural to avoid niceties and to fix the tax by the actual price received. Congress could do that as properly as it could have added one-tenth to the tax on the price as fixed by the other items determining the charge to the buyer. The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore, it is part of the price, and if the statute were taken literally, as there would be no reason for not taking it if it were now passed for the first time, there might be difficulty in accepting the commissioner's distinction even if the tax were made a separate item of the bill."

However, the Court affirmed the judgment by reason of the fact that that was the practice of the department, which

was apparently ratified by Congress. In the case of Pure Oil Company v Alabama, 244 Ala. 256, 12 S. (2d) 861, the tax was imposed upon wholesale dealers in certain oils measured by gross sales. The Court held as follows:

"In computing the amount of a privilege tax imposed on a wholesale dealer in illuminating, lubricating, or fuel oils measured by 'gross sales', the taxpayer may not deduct from the gross amount received by it from sales gallonage taxes imposed by the Federal and state governments or the amount of inspection fees imposed by the state on kerosene and illuminating oil sold in the state, although in the conduct of its business the taxpayer set up on its books the items represented by these taxes as distinct from the net sale price of each sale and disclosed on invoices to the purchasers the amount of taxes entering into the gross sum to be paid."

In this case the statement of facts shows that the above items were set up in the company's books and in the invoices to the purchasers distinct from the net sale price of each sale, disclosing the amount of taxes entering into the gross sum to be paid. The Court says:

"Appellant insists that it thus becomes the collector of these taxes from the purchaser, all accruing by reason of the sale and passed on to the purchaser; and to include them in 'gross sales' is to levy a tax upon a tax."

With reference to this contention, the opinion reads as follows:

"Invoices or bookkeeping cannot change the fact that the purchaser is paying the sale price fixed by the seller, nothing more nor less. They cannot stipulate the purchaser into the position of a taxpayer, and the seller into the position of a tax collector. The tax is payable to the State only, and by the seller. In the absence of statute authorizing such deductions, the 'gross sales' must include what the words import, namely, the gross prices paid for the products named when purchased in wholesale quantities as defined by the statute."

A retailer's occupation tax based on the selling price of property sold was involved in the case of Vause & Striegel v McKibbin, 379 Ill. 169, 39 N. E. (2d) 1006. In that case the taxpayer attempted to deduct from the amount of gross receipts the amount of the payment of said tax. The court said:

154

"Plaintiffs make the contention, among others, that the 'selling price' or the 'amount of a sale' may be determined with a deduction for an additional sum to cover the retailers' occupation tax where it is collected as a tax. They concede that if a retailer prices an article of merchandise at $1.03 without indicating before, at, or after the sale that three cents of the sum named is to be treated as a separate charge or item the merchant incurs a tax measured by the quoted price, namely, $1.03. The narrow issue is, accordingly, whether the retailer must pay the tax upon $1.03 or $1 where he prices the same article at $1 but receives in payment therefor $1.03, the additional three cents being designated, as between the retailer and consumer, a payment of tax. * * *

"The mere fact that the retailer and the consumer may, by a particular form of billing, denominate the three cents additional charge in one instance a tax and in another a part of the selling price is not decisive. Manifestly, the State cannot be deprived of the tax upon the actual selling price irrespective of the form of invoice agreed upon by a retailer and the purchaser from him. Again, so far as the consumer is concerned, the selling price is $1.03, irrespective of the manner of bookkeeping. If a retailer elects to add the three cents exacted of him by the law to the original selling price of $1 he is not in a position to complain when the State demands that he pay a tax on the amount actually received by him from the consumer, namely, $1.03. In short, where a retailer adds the tax which he is required to pay, to the purchase price of the merchandise sold by him, he must pay the tax on the total amount received by him from the consumer. The tenuous distinction urged by plaintiffs cannot be sustained. * * * "

And in the case of Merchants Cigar and Candy Company v Birmingham, 245 Ala. 587, 18 S. W. (2d) 137, the court held:

"The amounts of stamp taxes levied on and paid by wholesale tobacco sellers under State statute and Birmingham City ordinance and added to prices of tobacco sold by wholesalers, to retailers are parts of such prices and hence included in wholesalers' 'gross receipts' subject to the city license tax imposed by this ordinance."

See, also, **Gruen Watch Company v Evatt, 143 Oh St 461, 28 OO 393.**

No contention is made as to that part of Rule 151 which allows a deduction of the Federal tax from the amount of receipts and no comment is made thereon.

In view of the foregoing, the Board finds that said Rule 151 is valid to the extent that it is challenged, and since it is agreed that the assessment in question was made in accordance with that rule the Board finds that said assessment was not unlawfully made.

It is, therefore, considered and adjudged that the action of the tax commissioner herein complained of be, and the same. hereby is, affirmed.