**BEDFORD SPORTSPARK, INC., Plaintiff, v. LESLIE, Defendant.**

Common Pleas Court, Summit County.

No. 213946.   Decided February 3, 1959.

Marshman, Hollington & Steadman, William Snyder, of Counsel, for plaintiff.

Herman E. Werner, for defendant.

## OPINION

By WATTERS, J.

On August 11, 1958, the Council of the Village of Northfield, Summit County, Ohio, adopted ordinance 1,958-14 entitled, "An Ordinance Providing for an Admissions Tax," as follows: (See Exhibit "A" attached to the Answer.) Section I A:

"There is hereby levied and imposed upon every person who pays an admission charge for the right or privilege to enter a theatre; auditorium; dance hall; roller or skating rink; athletic field; swimming pool; outdoor amusement park; automobile or motorcycle race or contest; horse race meeting; meeting at which horse racing is conducted for any stake, purse or award; horse show; circus; side show attraction; or any other public exhibition or performance for profit, within the Municipality of Northfield, a tax of three per centum (3%) on the amount of money paid for the ticket or right of admission thereto."

Section I B:

"Such tax shall apply to every admission charge for any such place or event sponsored within the Municipality of Northfield notwithstanding that the sale of the ticket or right of admission was made outside the corporate limits of the Municipality." . . . . .

Section III A:

"The tax hereby levied and imposed shall be paid by and collected from the person seeking admission to the place or event sponsored at the time the admission charge thereto is paid to the person receiving payment thereof." . . . . .

Plaintiff, Bedford Sportspark, Inc., is an Ohio corporation, for profit engaged in the business of operating horse racing meetings upon its premises located in the Village of Northfield. It operates under permit from the Ohio State Racing Commission, and conducts horse racing meetings, on specified dates, wherein the pari-mutuel system of wagering is permitted under the Ohio Racing Act.

The plaintiff corporation refuses to comply with the provisions of said ordinance and brings this action to enjoin the assessment or collection of said admission tax in the grounds that it violates the provisions of §3769.08 R. C. of the State of Ohio.

The defendant, Robert C. Leslie, Clerk-Treasurer of and on behalf of such Village, maintains that said ordinance is in all respects legal and proper generally, insofar as the plaintiff corporation and all other permit holders are concerned, in that said ordinance does not assess any license, excise tax or fee against the pari-mutuel take of a permittee conducting horse race meetings; that the admission tax is levied against the one paying the admission price, and not against the licensee.

The original, final Horse Racing Act was passed June 22, 1933, as Amended Senate Bill 372,115, Laws of Ohio, page 367. It became §§1079-1 to 1079-14, both inclusive, GC. See §1079-8 GC. It became effective June 28, 1933.

Effective in 1953 the R. C. became §§3769.01 to 3769.14, and §1079-8 GC as §3769.08 R. C., was amended to increase the take from the wagering to the State Commission.

In 1953, effective 7-21-53, §3769.081 R. C., was added which gave the right to the various municipalities wherein race meets are held to collect through the Racing Commission, from the permit holder, a certain percent of the wagering take, not to exceed $10,000.00 for any given year.

Later, effective in June, 1957, §3769.08 R. C., was further amended to its present form, and §3769.082 R. C., was passed to provide the "Ohio Fair Purse Fund," which has no bearing in the instant controversy. It was an aid to horse racing at the county fairs, and as a needed financial lift to them.

The original statute §1079-8 GC, and its successor statute §3769.08 R. C., all provided, and now provides, that:

"No other license or excise tax or fee, except as provided in §§3769.01 to 3769.14, inclusive R. C., shall be assessed or collected from such licensee by any county, township, district, municipal corporation, or other body having power to assess or collect a tax or fee."

It will be noted that the entire horse Racing Act is in contravention of the constitutional provision against conducting lotteries in the State of Ohio, which has brought the so-called bingo operation to grief. It is also in contravention of all the various anti gambling provisions of our state law and local ordinances. The Act permits pari-mutuel wagering or gambling at the track, but the so-called "bookie" operators are still illegal.

It is, therefore, necessary to hold that the whole Horse Racing Statute should be strictly construed. It gives the permit holders and patrons certain rights and immunities to do what otherwise would be an illegal gambling operation, and sets out certain contributions or splits the permit holder must make or share with the State, local governments and the county fair organizations, and then provides that nothing else shall be taken from the take of the permit holder or licensee, by any county, municipality, etc.

Does this mean that such bodies cannot levy an admission tax such as the one before us against the one paying the admission, or from the permit holder outside of the pari-mutuel take?

Has the State preempted generally the field of such an admission tax as we have here?

The State of Ohio had an admission tax law passed in 115 Ohio Laws 657 at the same session of the Legislature that passed the Horse Racing Act in 1933, the latter being 115 Ohio Laws 171 and Amended finally in 115 Ohio Laws 367 (1933).

That admission tax act became §5544-2 GC, and, as pertinent, reads as follows:

"A tax of 1% for each 10 cents or fraction thereof paid for admission to any place—to be paid by the person paying for such admission."

Under it, the assessment was against the person paying to be collected by the person collecting or receiving the admission price.

In 1936, effective December 30th, said section was amended (§5544-2 GC) to 3% upon the amount received. This made the tax payable by the person receiving the admission.

It became under the amendment an admission tax—a gross receipts tax, payable by the person receiving the admission price.

See **149 Oh St 1, Leader v. Glander; 48 Abs 148, Shallat v. Glander.**

The Legislature repealed this admission tax law in 1947 (**122 Ohio Laws 459**). So the State is no longer in the admission tax field.

Accordingly, generally, a municipality has the power to levy excise taxes for revenue where the State has not preempted the field.

See **147 Oh St 58, Haefner v. City of Youngstown, Syllabus (3).**

So generally then the Village of Northfield **had and has the full power** to levy the admission excise tax in question here. **There is no question on that.**

**Now we come to the question of whether §3769.08 R. C.,** prohibits the Village from levying an admission tax under its said ordinance against those who pay an admission to plaintiff race track.

As stated herein before, the Act must be strictly construed. All the contributions the permittee (plaintiff) has to make, plaintiff claims, under the said statute, is a percentage of the take passing through the betting machines subject to a $10,000.00 yearly limitation to the local jurisdiction (under **§3769.081 R. C.**).

There is nothing in **§3769.08 R. C.**, which pertains to or mentions or provides for or taxes or takes from from any admission charge that the licensee or permitte may charge. Whether the permittee charges an admission is wholly up to it. Obviously, many pay an admission and follow the races for the love and thrill of the "sport of kings" without wagering anything, and to enjoy the thrills thereof and. the relaxation and excitement, food and refreshments, and other incidentals.

Such persons do not contribute to or participate in, add to or detract from the pari-mutuel take.

The admission charge is exclusively under the control of the permittee. It is common knowledge that many are admitted on pass, free of charge. The main thing is the pari-mutuel wagering take which is not small. This is subject to some loss by the presence of a few unlawful bookies, who may operate their calling in spite of the watchful eye of the special law enforcement agents.

The State of Ohio is not concerned under the statute **§3769.08 R. C.**, etc., with whether the admittee pays for his admission or not.

The State is interested only in the pari-mutuel take for itself and the other beneficiaries set forth in said statutes. The State has no admissions tax; the field is open.

The Statute is to be strictly construed. It says nothing about the admission price, and takes no part of it. It does not say that a subdivision of the State cannot levy an admission tax against the permittee.

The Statute **§3769.08 R. C.**, says, "No other license or excise tax or fee except as provided in **§§3769.01 to 3769.14**, inclusive, **R. C., . . . . .** shall be assessed or collected from such licensee, by any county . . . . . etc." All of which refers back to the pari-mutuel take, out of which the State and other subdivisions, and the County Fair Board, share.

The evidence does not show whether the State, while its admission tax was in force, levied or collected such tax from the horse racing licensees (from 1933 to 1947). However, it is the court's opinion the State could have then done so; otherwise, the admissions tax would not have been a law of general application to all classes.

And, in the court's opinion, going further, the State having abandoned the admission tax, any subdivision under a general admission tax ordinance could reach the permittee of a rack track within its jurisdiction.

In any event, in the case at bar, the Village of Northfield is not taxing the 3% against the licensee, plaintiff corporation, but the tax is upon the admittee, the person who pays the admission.

It was argued by plaintiff's counsel in the brief that as a matter of fact, from a practical standpoint, the operator would have to absorb this tax itself, and would then, in effect, be paying it. This, of course, would be a matter of policy of the operator and could not affect the problem before the court.

Counsel discusses §3769.081 R. C., which, in substance, as pertinent here, provides:

"The tax commissioner shall collect from each permit holder . . . . . one-tenth of one percent . . . . . (of the amount wagered) . . . . . for the purpose of providing operating revenue for the political subdivisions wherein such meetings are held . . . . ."

This is limited as set forth above to $10,000.00 a year.

Counsel for plaintiff argues that this section, passed in 1953, shows the legislative intent, that the local authorities should not derive any tax income from racing activities, and its desire to help such localities to meet the operating expenses during race meets.

It will be noted, however, that this statute (§3769.081 R. C.), was passed in 1953, twenty years after the original Horse Racing Law was passed, which, from the start, contained the prohibition relied on in present §3769.08 R. C., and was inserted right after the latter statute, and referred, as in all other instances, **to a percentage of the amounts wagered**, as did §3769.082 R. C., passed in 1957 to help out the Fair Boards.

The Legislature limited such contribution from the amount wagered to $10,000.00. If it intended to restrict such subdivisions from levying an admissions tax, it could have so stated. See **162 Oh St 200, Goodyear Aircraft v. Peck** (on legislative interpretation and intent). They did not so state and never have in said act.

There is no evidence before the court as to whether or not at the time the legislature passed §3769.081 R. C., to aid said subdivisions any of them had admission tax laws and were enforcing it against the tracks.

If such was the fact, the legislators would know about it, and if they passed the above statute, without specifically prohibiting such a tax, it would be very significant.

The court finds that the ordinance in question is legal and valid and enforcible. Accordingly, the petition of the plaintiff is dismissed at its costs.

A journal entry will be prepared by counsel, with exceptions to plaintiff.