FEDERAL PAPER BOARD CO., INC., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

[Cite as Federal Paper Board Co. v. Kosydar (1974), 37 Ohio St. 2d 28.]

(No. 73-324—Decided January 23, 1974.)

30

*Messrs. Glander, Brant, Ledman & Newman* and *Mr. C. Emory Glander,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Will Kuhlman,* for appellee.

CORRIGAN, J. Appellant presents two propositions of law challenging the decision of the Board of Tax Appeals. Appellant argues: (1) That there is no evidence in the record that the motor vehicle equipment in question ever

came to rest in Ohio prior to its use in an integrated system in interstate commerce and, therefore, the decision of the Board of Tax Appeals, that such equipment is subject to the Ohio use tax, is unreasonable and unlawful; and (2) that the Ohio use tax may not be levied upon gross rentals paid by the taxpayer for motor vehicle equipment after the use of such equipment in an integrated system of interstate commerce has begun.

We are in agreement with both propositions. However, since both propositions depend upon finding that no taxable moment occurred in Ohio, it is unnecessary to discuss appellant's second contention.

R. C. 5741.02 levies an excise tax on the storage, use, or other consumption of tangible personal property in this state, subject to the following relevant exception contained therein:

"(C) The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

"* * *

"(3) Property, the storage, use, or other consumption of which this state is prohibited from taxing by the Constitution of the United States, laws of the United States, or the Constitution of this state. This exemption shall not exempt from the application of the tax imposed by this section the storage, use, or consumption of tangible personal property which was purchased in interstate commerce, but which has come to rest in this state, provided that fuel to be used or transported in carrying on interstate commerce which is stopped within this state pending transfer from one conveyance to another is exempt from the excise tax imposed by this section and Section 5739.02 of the Revised Code."

This exception reflects the exclusive power granted Congress by Section 8 of Article I of the United States Constitution: "To regulate commerce with foreign nations

32

and among the several states, and with the Indian tribes."

United States Supreme Court decisions interpreting that clause clearly establish that Section 8, Article I, forbids a state to legislatively impose a direct burden upon interstate or foreign commerce and deprives the state of power to impose more onerous public burdens upon the products of other states brought within the taxing state than are imposed upon like products produced and sold within its own boundaries.

However, Section 8, Article I, is not an absolute bar to state taxation which may have some incidental effect upon interstate commerce. State sales taxes, measured by gross receipts or the amount of sales, have been held valid where the taxes are nondiscriminatory, i. e., so apportioned as to involve no risk of a similar tax on the same sales or receipts by another state. *General Motors Corp.* v. *Washington* (1964), 377 U. S. 436, rehearing denied, 379 U. S. 875.

State use tax statutes have been consistently upheld by the United States Supreme Court in their application to tangible personal property where the property was carried into the taxing state, and there brought permanently to rest, or halted temporarily before resuming its interstate course or usage. *Scripto* v. *Carson* (1960), 362 U. S. 207; *General Trading Co.* v. *State Tax Comm.* (1944), 322 U. S. 335; *Nelson* v. *Sears, Roebuck & Co.* (1941), 312 U. S. 359; *McGoldrick* v. *Berwind-White Mining Co.* (1940), 309 U. S. 33; *Felt & Tarrant Mfg. Co.* v. *Gallagher* (1939), 306 U. S. 62; *Pacific Telephone & Telegraph Co.* v. *Gallagher* (1939), 306 U. S. 182; *Southern Pacific Co.* v. *Gallagher* (1939), 306 U. S. 167; *Henneford* v. *Silas Mason Co.* (1937), 300 U. S. 577.

In *Henneford* v. *Silas Mason Co.*, Justice Cardozo determined that a state use tax is a tax upon the privilege of use of property after interstate commerce is at an end. The rationale behind the decision lies in the fact that things acquired or transported in interstate commerce, once they are at rest, become a part of the common mass of property within the state of destination. Since the privilege

of use is one of a number of privileges or rights that attach to property or ownership, this property right may be subject to state taxation which is nondiscriminatory in its operation.

In *Southern Pacific Co.* v. *Gallagher, supra,* the United States Supreme Court upheld a state use tax upon the rolling stock of a railroad company engaged in intrastate and interstate commerce. There, the tangible personal property was purchased out of state by the railroad company and temporarily stored in the taxing state for the purpose of protection, pending its immediate or subsequent installation or use as a part of the company's interstate transportation facilities.

The court held that the tax was not violative of the Commerce Clause of the United States Constitution because the retention and installation of the property constituted the exercise of rights of ownership within the state and were, therefore, intrastate taxable events, and, when the property had reached the end of its interstate transportation but had not begun to be consumed in interstate operation, a "taxable moment" occurred, rendering the tax on the railroad company's exercise of its property rights effective.

In so holding, Mr. Justice Read, speaking for the majority, stated, at page 177:

"* * * 'Practical continuity' does not always make an act a part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an inter-

34

ference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress."

In *Tri-City Broadcasting Co.* v. *Bowers* (1959), 169 Ohio St. 126, this court adopted that position. In *Tri-City*, we held that transmitting equipment purchased in interstate commerce and shipped from out of state into Ohio for a principal and primary use in interstate broadcasts, although installed shortly after arrival, was nonetheless subject to the Ohio use tax. The transmitting equipment had been retained and installed in Ohio, and its interstate transit had ended.

The court, in its opinion, stated, at page 132:

"In the imposition of the use tax here we see no need of drawing a fine distinction between the basis of temporary storage of the items followed by relatively immediate installation and the basis as contended for by appellee of the 'principal and primary use' of operating the transmitter in interstate commerce."

In a more recent case, *Consolidation Coal Co.* v. *Porterfield, supra* (25 Ohio St. 2d 154), this court stated, at page 158:

"The touchstone of a break in the continuity of transit is the existence of a 'taxable moment,' *i. e.*, a determination that interstate commerce is at an end. When the property sought to be reached under the use tax is no longer integrated in the flow of interstate commerce, a tax upon the privilege of exercising ownership rights in respect thereof does not run afoul of the prohibition against state taxation of the operation of interstate commerce. The fact that, subsequent to the 'taxable moment,' the property is newly inserted into interstate commerce does not affect the validity of the use tax assessment. *Southern Pacific Co.* v. *Gallagher* (1939), 306 U. S. 167, 83 L. Ed. 586; *Pacific Tel. & Tel. Co.* v. *Gallagher* (1939), 306 U. S. 182, 83 L. Ed. 595;

*Tri-City Broadcasting Co.* v. *Bowers* (1959), 169 Ohio St. 126, 158 N. E. 2d 203.''

It is clear from an examination of these decisions that any exercise of property or ownership rights in property purchased out of state and transported in interstate commerce into Ohio constitutes a taxable event, where there is also a "taxable moment" in Ohio.

The Tax Commissioner's determination, based upon mileage analysis results, that the primary use of the six units in question was in intrastate commerce, absent other probative evidence that a "taxable moment" did occur, *i. e.*, that the continuity of interstate transit came to an end in Ohio, and at that time appellant exercised ownership or property rights over the units, is insufficient to establish the existence of a "taxable moment" in Ohio.

As is indicated by the preceding cases, evidence of primary or majority use does not establish the existence of a "taxable moment," although it may be of probative value on that issue.

This court stated in paragraph two of the syllabus in *Consolidation Coal Co.* v. *Porterfield, supra* (25 Ohio St. 2d 154):

"Where a material portion of a Board of Tax Appeals decision is not supported by any probative evidence of record, the decision is unreasonable and unlawful. (Paragraph two of the syllabus in *Citizens Financial Corp.* v. *Porterfield*, 25 Ohio St. 2d 53, followed.)"

The *Consolidation Coal Co.* case appears to be dispositive of the case at bar. In *Consolidation*, the appellant coal company, a Pennsylvania corporation operating mines in Ohio, leased railroad cars in "unit trains" from another Pennsylvania corporation. The trains were used solely for delivering coal to appellant's Michigan plant. The trains made continuous round trips beween Ohio and Michigan, uninterrupted except for crew changes and associated stops. The Tax Commissioner levied a use tax upon the basis that some 18 or 19 days had elapsed between delivery of the railroad cars in Pennsylvania and the date when the

cars were first placed in service, delivering coal. This court held that the record was devoid of evidence identifying the occurrence of a "taxable moment"; that, without such evidence, the record showed no interruption of the continuum of interstate commerce.

Similarly, in the present case, the leased units purchased by appellant outside Ohio came into Ohio loaded with materials or finished products. The units were garaged and serviced in Steubenville at the lessor's own garage, and not by appellant. The only evidence in the record relating to Ohio use is the commissioner's mileage analysis. Although the results of this analysis indicate that most of the mileage of the six units was in Ohio, no correlation was established between such mileage and the actual destinations of the units.

It is the opinion of this court that the record is devoid of any probative evidence of the existence of a "taxable moment" in Ohio. The decision of the Board of Tax Appeals is unreasonable and unlawful, and is, therefore, reversed, and the cause remanded to the Board of Tax Appeals for further proceedings.

*Decision reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.