Louisville Title Agency for N. W. Ohio, Inc., Appellant, *v*. Kosydar, Tax Commr., Appellee.

(No. 74-516—Decideod July 9, 1975.)

*Messrs. Eastman, Stichter, Smith & Bergman, Mr. Richard D. Stichter* and *Mr. Morton Bobowick,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

*Per Curiam.* The first proposition of law presented by appellant is: To subject a vessel, although owned by an Ohio corporation, which is only in Ohio for repairs and maintenance work, to Ohio use taxation would violate Section 8, Article I of, and the due process clause of the Fourteenth Amendment to, the United States Constitution because such vessel has not acquired a taxable situs in Ohio.

This court finds, on the record before it, that appellant's contention is not well taken. Although appellant asserts that the vessel was "only in Ohio for repair and maintenance work," the record shows that in Ohio something more than repair and maintenance work was done to the boat. In Toledo, during a stay of ten days to two weeks, new equipment was installed consisting of new heads and holding tanks. After a summer cruise in Canadian waters, the boat returned to Catawba Marina and was there for ten days, during which time, in addition to repairs, additional new equipment consisting of an automatic pilot and an additional depth finder were installed. This court is of the opinion that the installation of the new equipment during the time the boat was in dock was an exercise of a right or power incidental to the ownership of the thing used and constitutes a taxable event. *Woman's Bowling Congress* v. *Porterfield* (1971), 25 Ohio St. 2d 271, 267 N. E. 2d 781.

The second proposition of law urged by the appellant is that the decision of the Tax Commissioner was unreasonable and unlawful because it was not supported by any probative evidence of record. It is the opinion of a majority of this court that there is probative evidence in the record to support the decision of the Board of Tax Appeals.

Appellant cites *Consolidation Coal Co.* v. *Porterfield*

(1971), 25 Ohio St. 2d 154, 267 N. E. 2d 304, in support of its argument that "the boat in question was within interstate commerce at all times," and that the " * * * fact that warranty, repair and maintenance work was done while the boat was in Ohio does not take the boat out of interstate commerce because the boat's temporary stay within the state * * * [was] 'reasonable and in furtherance of the intended interstate transportation.' "

In that case the following relevant statements appear at pages 157 and 158:

" * * * The states have been denied the power to levy a tax on articles of commerce in continuous interstate transit, even though such articles might be at rest temporarily in the state, provided that the interruption of the passage is reasonable and in furtherance of the intended interstate transportation.

" * * *

"The touchstone of a break in the continuity of transit is the existence of a 'taxable moment,' i. e., a determination that interstate commerce is at an end. When the property sought to be reached under the use tax is no longer integrated in the flow of interstate commerce, a tax upon the privilege of exercising ownership rights in respect thereof does not run afoul of the prohibition against state taxation of the operation of interstate commerce. The fact that, subsequent to the 'taxable moment,' the property is newly inserted into interstate commerce does not affect the validity of the use tax assessment."

The record shows that the boat was docked at Toledo for ten days or two weeks while new heads and holding tanks were installed and the engines were "gone over and repaired." Subsequently, the boat was docked at Catawba Marina for ten days where repairs were again made and an automatic pilot and depth finder were installed.

If this "interruption of the passage" in Ohio was "in furtherance of the intended interstate transportation," then no "taxable moment" occurred which could support the imposition of the tax in question. The record reveals,

however, that during the stopovers in Ohio something more than repair and maintenance work was done to the boat, *i. e.*, new equipment was installed.

The record indicates that the boat was at the Brenner Marine in Toledo for a period of ten days to two weeks where "the engines were gone over and repaired and additional equipment was added." This additional equipment included the installation of new heads and holding tanks. The record indicates that the new heads were intended to "comply with the Canadian law and the Michigan law." The addition of that equipment might logically be construed to be in furtherance of interstate transportation.

The boat was then taken to the Toledo Yacht Club for two or three days and after that "was in Michigan and the Georgian Bay area for the balance of the summer."

The boat was then taken to the Catawba Marina in Ohio where, during a ten-day period, an automatic pilot and an additional depth finder were installed. There is no evidence in the record that the installation of the automatic pilot and additional depth finder at Catawba Marina were essential to and "in furtherance of the intended interstate transportation."

R. C. 5741.02(A) provides, in part:

"For the use of the general revenue fund of the state, an excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property * * *."

R. C. 5741.01 (C) reads:

" 'Use' means and includes the exercise of any right or power incidental to the ownership of the thing used."

The foregoing statutes were construed in *Woman's Bowling Congress* v. *Porterfield* (1971), 25 Ohio St. 2d 271, 267 N. E. 2d 781, wherein the following discussion of R. C. 5741.01 (C) appears at page 274:

"Appellant contends that the emblems and awards which it mails to its out-of-state members are not susceptible to a use tax because appellant, rather than purchasing such items for use in Ohio, merely stores them for use

outside of this state. In effect, appellant would define the word *use* to mean the intended or the ultimate use of such property, *viz.* the enjoyment of these awards by the WIBC members who eventually receive them. To support this argument, appellant emphasizes that the bulk of the emblems and awards are received by it in individual envelopes which it mails to its members unopened.

"That line of reasoning does not comport with the statutory definition of *use* set forth in paragraph (C) of R. C. 5741.01, *supra,* wherein the General Assembly defined *use* to mean and include 'the exercise of *any* right or power incidental to the ownership of the thing used.' ''

Thus the "exercise of any right or power incidental to the ownership of the thing used" constitutes a taxable event. It is evident that the installation of the automatic pilot and depth finder was an exercise of a power incidental to the ownership of the boat.

It is the opinion of this court that there is probative evidence of record to support the decision of the Board of Tax Appeals, and that its decision is neither unreasonable nor unlawful.

*Decision affirmed.*

O'Neill, C. J., Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.

Herbert, J., not participating.

William B. Brown, J., concurring. I join with the majority because, on this record, the Tax Commissioner sustained his burden of proving a "taxable moment" of appellant's vessel in the state of Ohio. See *Federal Paper Board Co.* v. *Kosydar* (1974), 37 Ohio St. 2d 28, 35-36.