GOCHNEAUR, APPELLANT, v. KOSYDAR, TAX COMMR., APPELLEE.

[Cite as Gochneaur. v. Kosydar (1976), 46 Ohio St. 2d 59.]

(No. 75-395—Decided April 28, 1976.)

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman* and *Mr. Randall D. Luke,* for appellant.

*Mr. William J. Brown,* attorney general, *Mrs. Maryann B. Gall* and *Ms. J. Elaine Bialczak,* for appellee.

*Per Curiam.* Appellant's argument[1] is basically a reiteration of his "position" before the board, that his horses are not subject to the Ohio use tax because (1) they are in the exclusive federal realm of interstate commerce[2] and (2) they qualify for an "agricultural exemption."

---

[1] Appellant advances an additional argument that R. C. 3769.08 ("* * * [n]o other license or excise tax or fee * * * shall be assessed or collected from such licensee by any * * * other body having power to assess or collect a tax or fee * * *") and R. C. 3769.10 ("* * * the power of the Tax Commissioner shall extend only to enforcement and administration of the taxes levied by Section 3769.08 of the Revised Code * * *") preclude the imposition of a use tax "on any portion of the business or property of horse racing," because R. C. Chapter 3769 vests "the exclusive control and taxation of horse racing with the State Racing Commission." Upon examination, however, we must reject that argument, first, because the term "such licensee" in R. C. 3769.08 refers only to a holder of a permit to conduct a horse-racing meeting, *i. e.,* a racetrack. Secondly, we interpret the quoted portion of R. C. 3769.10 to be a delineation of authority between the State Racing Commission and the Tax Commissioner. Both are empowered to *enforce* R. C. 3769.01 to 3769.14, inclusive, but as to enforcement and administration of *the taxes* contemplated therein, the Tax Commissioner is limited to R. C. 3769.08.

[2] The Commerce Clause, contained in Section 8 of Article I of the United States Constitution, reads: "The Congress shall have power * * * [t]o regulate commerce with foreign nations, and among the several states, and with the Indian Tribes."

This record adequately supports the existence of a "taxable moment" sufficient to remove the cloak of interstate immunity from state taxation. See *Louisville Title Agency for N. W. Ohio* v. *Kosydar* (1975), 43 Ohio St. 2d 109; *Federal Paper Board Co.* v. *Kosydar* (1974), 37 Ohio St. 2d 28, 35-36; *Consolidation Coal Co.* v. *Porterfield* (1971), 25 Ohio St. 2d 154.

We therefore direct our inquiry to appellant's assertions of an "agricultural exemption" and whether the board properly excluded consideration of that issue.

I

Appellant asserts that his "[r]ace horses are exempt from the Ohio use tax by reason of the agricultural exemption, as provided by Section 5709.01 of the Ohio Revised Code * * *."

R. C. 5709.01 provides that "* * * [a]ll personal property located and used in business in this state, and all domestic animals kept in this state and not used in agriculture * * * are subject to taxation * * *."

Certainly, appellant's horses are included within the definition of "personal property" (R. C. 5701.03), and they are "domestic animals." *Red Fox Stables* v. *Porterfield* (1972), 28 Ohio St. 2d 239, 241. See *Snow* v. *Courtright* (1974), 38 Ohio St. 2d 305; 2 Ohio Jurisprudence 2d 396, Animals, Section 3. Thus, if the horses are "used in agriculture," they are not properly assessable because only the items of tangible personal property contemplated by R. C. 5709.01 are subject to taxation in this state. *Pittsburgh Steel Co.* v. *Bowers* (1962), 173 Ohio St. 74, 76.

Despite the logic of appellant's proposition, it can not apply to this case because it misconstrues the incidence of taxation provided by R. C. 5709.01. That statute designates the items of property which may be levied upon qua property. The present case involves the levy of an excise tax which does not run against property. Rather, such tax finds its incidence in the *storage, use or other consumption of* tangible personal property (R. C. Chapter 5741) and in *retail sales of* tangible personal property (R. C. Chapter 5739).

R. C. 5741.02 provides:

"(A) For the use of the general revenue fund of the state, an excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property * * *.

"* * *

"(C) The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

"* * *

"(2) Tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by Sections 5739.01 to 5739.31, inclusive, of the Revised Code.

"* * *

"For the purpose of the proper administration of Sections 5741.01 to 5741.22, inclusive, of the Revised Code, and to prevent the evasion of the tax hereby levied, it shall be presumed that any use, storage, or other consumption of tangible personal property in this state is subject to the tax until the contrary is established."

R. C. 5739.02 provides:

"For the purpose of providing revenue with which to meet the needs of the state for poor relief in the existing economic crises, for the use of the general revenue fund of the state, for the purpose of securing a thorough and efficient system of common schools throughout the state, and for the purpose of affording revenues, in addition to those from general property taxes, permitted under constitutional limitations, and from other sources, for the support of local governmental functions, and for the purpose of reimbursing the state for the expense of administering Sections 5739.01 to 5739.31 of the Revised Code, an excise tax is hereby levied on each retail sale made in this state.

"* * *

"(B) The tax does not apply to the following:

"* * *

"(17) Sales to persons engaged in farming, agriculture, horticulture, or floriculture, of tangible personal property for use or consumption directly in the production by farming, agriculture, horticulture, or floriculture of other tangible personal property for use or consumption directly in the production of tangible personal property for sale by farming, agriculture, horticulture, or floriculture; of material and parts for incorporation into any such tangible personal property for use or consumption in production; and of tangible personal property for use or consumption in the conditioning or holding of products produced by and for such use, consumption, or sale by persons engaged in farming, agriculture, horticulture, or floriculture except where such property is incorporated into real property * * *.

"* * *

"For the purpose of the proper administration of Sections 5739.01 to 5739.31 of the Revised Code, and to prevent the evasion of the tax, it is presumed that all sales made in this state are subject to the tax until the contrary is established."

The taxing scheme envisioned by R. C. Chapter 5741 "does not apply" to the use, storage, or consumption of personal property, the sale of which is not subject to levy under R. C. Chapter 5739. Thus, the question becomes whether sales of the subject horses to appellant are sales to which the R. C. 5739 excise tax "does not apply," or more specifically: Would such sales satisfy the requirements of R. C. 5739.02(B)(17), *supra*?

*Benken* v. *Porterfield* (1969), 18 Ohio St. 2d 133, 137, examined the meaning of the term "agriculture" by noting that its definition in *Yoder Bros.* v. *Bowers* (1959), 169 Ohio St. 211,—"[t]he term 'agriculture' * * * is the art or science and labor of [1] cultivating the ground, [2] the planting, care of, and the harvesting of crops * * * and [3] the rearing, use of, feeding and management of livestock"—was "unnecessarily restrictive" and adopted the dictionary definition as follows:

"Webster's Third New International Dictionary defines 'agriculture' as the 'science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal.' We believe that this definition embodies the ordinary meaning of agriculture."

Appellant's horses satisfy both the latter, broader definition, and part three of the former definition, because his horses are undeniably "livestock."[3] Accordingly, appellant is engaged in agriculture. See *Mentor Lagoons* v. *Zoning Bd. of Appeals* (1958), 168 Ohio St. 113, 119-120; *Harris* v. *Bd. of Appeals* (1975), 44 Ohio St. 2d 144.

Thus, the controlling question presented by R. C. 5739.-02(B)(17) is whether appellant bought his horses "for use or consumption directly in the production by farming * * * [or] agriculture * * * of other tangible personal property for use or consumption directly in the production of tangible personal property for sale by farming * * * [or] agriculture * * *"; *i. e.*, were the subject horses bought with a view to using them for breeding activities?

Although the taxpayer in *Red Fox Stables* v. *Porterfield, supra* (28 Ohio St. 2d 239), claimed that operation of a riding academy and horse stable constituted engaging in agriculture within the meaning of subsection (B)(17), the court noted that he did "not engage in breeding and raising horses." We need not now reexamine that case because such fact serves to plainly distinguish that case from the present cause wherein undisputed evidence of record requires a finding that appellant intended to use his horses for breeding purposes.

## II

The Tax Commissioner justifies the board's refusal to consider appellant's claim of an "agricultural exemption" by arguing that the notice of appeal to the board did not specify or even raise the question. Appellee relies upon R.

---

[3]Webster's Third New International Dictionary defines "livestock" as, "animals of any kind kept or used for use or pleasure * * *."

C. 5717.02, which requires that the notice of appeal "\* \* \* specify the errors therein complained of," and *Queen City Valves* v. *Peck* (1954), 161 Ohio St. 579, which held that this court will not reverse a decision of the board where the notice of appeal to the board does not enumerate in definite and specific terms the precise errors claimed.

Appellant counters that position, first, by proposing that a notice of appeal containing at least one sufficiently specified error—specification of the alleged interstate commerce exemption—is sufficient to invoke the jurisdiction of the board to consider all valid errors. That argument avoids *Queen City Valves* but comes directly under the guns of *Ladas* v. *Peck* (1954), 162 Ohio St. 159, the syllabus of which reads:

"Where, on an appeal from an order of the Tax Commissioner to the Board of Tax Appeals pursuant to Section 5717.02, Revised Code, the notice of appeal does enumerate in definite and specific terms certain precise errors claimed but there is no evidence to support such claimed errors, and where that notice of appeal further purports to describe error by the use of language so broad and general that it might be employed in nearly any case, a decision of the Board of Tax Appeals affirming such order of the Tax Commissioner will not be reversed by this court as unlawful or unreasonable."

Finally, appellant argues that his "notice of appeal was sufficiently specific to confer jurisdiction on the board to consider the propriety of an agricultural exemption."

It is the opinion of this court that appellant's final contention must be rejected as well, even though the provisions of R. C. 5739.02(B)(17) and 5741.-02(C)(2) apply to the sale, use and storage of appellant's race horses, and the General Assembly has determined that the Ohio excise tax *does not apply* to the sale, use, or storage of property to which R. C. 5739.02(B) and 5741.02(C) apply.

We do not choose to retreat from the specificity requirement for notices of appeal as enunciated in R. C. 5717.-

02 and the decisions of this court (see *Abex* v. *Kosydar* [1973], 35 Ohio St. 2d 13), and we are heedful of the provision of both R. C. 5739.02 and 5741.02 that it is presumed that all sales made and any use, storage, or other consumption of tangible personal property in this state is subject to the tax until the contrary is established.

We would hope, however, that in future cases the commissioner affirmatively check his assessments against the inapplicability provisions of R. C. 5739.02(B) and 5741.02 (C)(2).

The decision of the Board of Tax Appeals must be affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.