CINCINNATI BENGALS, INC., APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Cincinnati Bengals v. Lindley (1980), 61 Ohio St. 2d 177.]

(No. 79-685—Decided February 6, 1980.)

*Messrs. Taft, Stettinius & Hollister, Mr. Stephen M. Nechemias* and *Mr. James H. Brun,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

*Per Curiam.* Appellant, in its sole proposition of law, asserts that compensation paid to the football players and part-time scouts for games played and services performed outside the state of Ohio does not constitute compensation paid in the state of Ohio for purposes of determining the franchise tax "payroll factor," pursuant to R. C. 5733.05 (B)(2)(b).

Appellant improperly applied R. C. 5733.05(B)(2)(b) by not allocating 100 percent of the corporation's payroll to Ohio for purposes of calculating the franchise tax.

The Ohio franchise tax is an excise tax levied against a corporation "***for the privilege of exercising its franchise during the calendar year for which such amount is payable***." R. C. 5733.01(A). The tax rates are determined by R. C. 5733.06.* The tax rates, as described in R. C. 5733.06, are applied to the value of the issued and outstanding shares of stock, pursuant to R. C. 5733.05. The value of the issued and outstanding shares of stock is determined by either the "net worth" method (R. C. 5733.05[A]) or the "net income" method (R. C. 5733.05[B]). For the years in question, appellant computed its Ohio franchise tax under the "net income" method. The amount of appellant's payroll allocated to Ohio is relevant in determining the amount of the franchise tax.

Initially, it is noted that appellant did not raise the issue of allocation of its scouts' compensation in its notices of appeal to the Board of Tax Appeals. Accordingly, that issue is not before this court. *Gochneaur* v. *Kosydar* (1976), 46 Ohio St. 2d 59, 66.

---

* R. C. 5733.06 states, in pertinent part, as follows:

"The tax hereby charged each corporation subject to this chapter shall be the sum of divisions (A) and (B) of this section or division (C) of this section, whichever is greater:

"(A) Four percent upon the first twenty-five thousand dollars of the value of the taxpayer's issued and outstanding shares of stock as determined under division (B) of section 5733.05 of the Revised Code.

"(B) Eight percent upon the value so determined in excess of twenty-five thousand dollars; or

"(C) Five mills times that portion of the value of the issued and outstanding shares of stock as determined under division (A) of section 5733.05 of the Revised Code."

The remaining critical issue is whether compensation to appellant's football players which is allocable to non-Ohio games is compensation paid in Ohio for purposes of determining the amount of appellant's Ohio franchise tax.

R. C. 5733.05(B)(2)(b)(ii) provides, in pertinent part:

"Compensation is paid in this state if: \*\*\*(3) some of the service is performed within this state and either the base of operations, or if there is no base of operations, the place from which the service is directed or controlled is within this state\*\*\*."

It is undisputed that some of the service, such as the playing of some of the games, is within Ohio. The second prong of the test is whether there is a "base of operations" or the "direction and control" of the corporation is within Ohio.

We agree with the board's holding that appellant's "base of operations" is within Ohio.

In the mechanics of operating a professional football team which represents Cincinnati, appellant most definitely has its "base of operations" in Ohio. Pre-season training and a majority of the practice sessions are in Ohio. The players are briefed as to football strategy and the overall game plan for each upcoming game in Ohio. A majority of the games, both pre-season and the regular season, are played in Ohio. The players return to Ohio immediately following all games played outside Ohio. In addition to the foregoing, most of the administrative decisions concerning the players, such as how they are transported, when they meet, where they play, and even what and where they eat, are controlled and coordinated from appellant's base of operations in Cincinnati.

Accordingly, the decision of the Board of Tax Appeals, determining that Ohio is the players' base of operations, is not unreasonable or unlawful, and is, therefore, affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and Holmes, JJ., concur.