CARGILL, INC., ET AL., APPELLEES, *v.* LINDLEY, TAX COMMR., APPELLANT.

[Cite as Cargill, Inc. *v.* Lindley (1983), 4 Ohio St. 3d 210.]

(No. 82-1019—Decided May 4, 1983.)

*Smith & Schnacke Co., L.P.A., Ms. Maryann B. Gall, Mr. Michael A. Moctezuma* and *Mr. Gary J. Hansen,* for appellees.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark A. Engel,* for appellant.

*Per Curiam.* Appellees argue that the leased railroad tank cars are used in an integrated system of interstate commerce and therefore not subject to Ohio use tax pursuant to R.C. 5741.02(C)(3) and Section 8, Article I of the United States Constitution. This court agrees.

R.C. 5741.02 levies an excise tax on the storage, use, or other consumption in this state of tangible personal property. R.C. 5741.01 defines these terms.

"(B) 'Storage' means and includes any keeping or retention in this state for use or other consumption in this state.

"(C) 'Use' means and includes the exercise of any right or power incidental to the ownership of the thing used."

This excise tax is subject to the following relevant exception contained in R.C. 5741.02:

"(C) The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

"* * *

"(3) Property, the storage, use, or other consumption of which this state is prohibited from taxing by the constitution of the United States, laws of the United States, or the constitution of this state. This exemption shall not exempt from the application of the tax imposed by this section the storage, use, or consumption of tangible personal property which was purchased in interstate commerce, but which has come to rest in this state, provided that fuel to be used or transported in carrying on interstate commerce which is stopped within this state pending transfer from one conveyance to another is exempt from the excise tax imposed by this section and section 5739.02 of the Revised Code;"

This exception reflects the exclusive power granted Congress by Section 8, Article I of the United States Constitution, "[t]o regulate commerce with foreign nations and among the several states * * *." The United States Supreme Court has decided, on several occasions, that the Commerce Clause forbids state taxation which imposes a direct burden upon the operation of interstate commerce. *Helson & Randolph* v. *Kentucky* (1929), 279 U.S. 245, 248-249.

However, the Commerce Clause does not act as a complete bar. State use taxes have been upheld in their application to tangible personal property after the property has come to rest in the taxing state, and has reached the end of its interstate transit. *Henneford* v. *Silas Mason Co.* (1937), 300 U.S.

577, 582. The underlying rationale for such an exception is that the tax is imposed, not upon the operation of interstate commerce, but upon the privilege of use after commerce has ceased. See *Plowden & Roberts, Inc.* v. *Porterfield* (1970), 21 Ohio St. 2d 276 [50 O.O.2d 497]. Property may also come to rest by reason of a break in the transit, thus becoming subject to the power of the states to impose a nondiscriminatory tax. *Minnesota* v. *Blasius* (1933), 290 U.S. 1. By coming to rest, property acquired in interstate commerce becomes a part of the common mass of property within the destination state. Additionally, a state may validly impose a tax on a local activity which is related to interstate commerce if "the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it." *Michigan-Wisconsin Pipe Line Co.* v. *Calvert* (1954), 347 U.S. 157, 166.

In Ohio, this court has adopted a similar position. "The touchstone of a break in the continuity of transit is the existence of a 'taxable moment,' *i.e.,* a determination that interstate commerce is at an end. When the property sought to be reached under the use tax is no longer integrated in the flow of interstate commerce, a tax upon the privilege of exercising ownership rights in respect thereof does not run afoul of the prohibition against state taxation of the operation of interstate commerce. The fact that, subsequent to the 'taxable moment,' the property is newly inserted into interstate commerce does not affect the validity of the use tax assessment." *Consolidation Coal Co.* v. *Porterfield* (1971), 25 Ohio St. 2d 154, 158 [54 O.O.2d 277].

Appellant, Tax Commissioner, argues that the railroad tank cars were not originally instrumentalities in interstate commerce because they were received as freight. The cars thus do not become instrumentalities of interstate commerce until after the initial loading. Alternatively, appellant contends that this case involves two separate and distinct uses: the first being the entry of the tank cars as freight, and the second arising after loading and shipping. In either event, the commissioner reasons, the break in the interim, during which the railroad cars sat on a siding in Dayton, meant there was no continuous stream of interstate commerce. This interval is said to have given rise to a "taxable moment."

In support of this argument appellant relies upon *Southern Pacific Co.* v. *Gallagher* (1939), 306 U.S. 167, and this court's earlier decision in *Tri-City Broadcasting Co.* v. *Bowers* (1959), 169 Ohio St. 126 [8 O.O.2d 118]. In *Southern Pacific Co.* v. *Gallagher,* the United States Supreme Court upheld a state use tax upon the certain properties of a railroad company engaged in intrastate and interstate commerce. Supplies purchased outside the state of California, such as office supplies, rails, equipment, machinery, tools, etc., were brought in for prompt application in the operation of its railroad. Accordingly, they became part of the common mass of property within the destination state. In *Tri-City Broadcasting Co.* v. *Bowers, supra,* this court held that transmitting equipment purchased in interstate commerce and shipped into Ohio from out of state was subject to the Ohio use tax. Even

though the equipment was installed shortly after arrival, for a principal and primary use in interstate broadcasts, once retained and installed in Ohio, its interstate transit had ended. The property had become a part of the common mass of property in Ohio under the taxpayer's exercise of ownership.

This court is not persuaded by appellant's arguments and the reliance on the above cases is misplaced. This court's decisions have shown a distinction in their analyses between assessments on the actual goods moving through interstate commerce and assessments on equipment which constitutes the means of transportation itself. Appellant's cases involve assessment of use taxes on the actual goods. Cases involving the latter equipment have required more tangible evidence of a break in interstate commerce since, unlike the material in *Tri-City Broadcasting, supra,* trucks or railroad cars do not enter the state as one thing and leave as another.

Therefore, coming to rest in this state, based on that fact alone, does not make such property a part of the common mass of property within the state or subject to the use tax. *Consolidation Coal Co.* v. *Porterfield, supra.* In that case, a Pennsylvania corporation, operating mines in Ohio, leased railroad cars from another Pennsylvania corporation. The leased cars ran empty from the point of delivery outside of Ohio to the company's mines in Ohio, were loaded, and then were used solely to deliver coal to a plant in Michigan. Thereafter the cars made continuous round trips between Ohio and Michigan for the same purpose. Although eighteen or nineteen days passed between the delivery of the cars and their first being placed into service, this court found no interruption of the continuum of interstate commerce and no "taxable moment."

In dealing with use taxes on the means of transportation, this court requires either a clear withdrawal from interstate commerce or a local activity from which to derive a nexus between the taxing state and the use sought to be taxed. *Consolidation Coal Co.* v. *Porterfield, supra.* Thus, in *Beatrice Foods Co.* v. *Lindley* (1982), 70 Ohio St. 2d 29, 34 [24 O.O.3d 68], the storage of leased motor vehicle equipment in Ohio, as well as the maintenance and servicing of those units in Ohio at the taxpayer's direction, constituted sufficient evidence of a "taxable moment" in Ohio to authorize the use tax assessment. In contrast, in *Federal Paper Board Co.* v. *Kosydar* (1974), 37 Ohio St. 2d 28 [66 O.O.2d 82], tractors and trailers were leased by the taxpayer outside of Ohio. This court found it probative that the lessor rather than the taxpayer was responsible for all maintenance and repair. The assessment of a use tax on those vehicles was reversed. Finally, in *Consolidation Coal Co.,* this court determined that the operation of a shuttle coal delivery was not sufficient to demonstrate an interruption of interstate commerce or a local activity subject to taxation.

Applying this standard to the present case, it is apparent that there is no "taxable moment" in Ohio. At all times the railroad cars were instrumentalities of interstate commerce. They were leased with the sole purpose of shipping appellees' products throughout the country. Possession was

transferred to appellees outside the state of Ohio. The fact that the cars entered the state empty and left full is representative of nothing more than two phases of a single interstate commerce activity. That the cars sat idle until time to load them is, alone, not dispositive of the issue. No local use or activity has been demonstrated. No maintenance or service was performed by appellees at all, let alone within Ohio. In short, the record is devoid of any probative evidence of the existence of a "taxable moment" in Ohio.

The decision of the Board of Tax Appeals, being supported by probative evidence of record, is reasonable and lawful and must be affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, O'NEILL and J. P. CELEBREZZE, JJ., concur.

O'NEILL, J., of the Seventh Appellate District, sitting for C. BROWN, J.