VILLAGE OF NORTHFIELD, APPELLEE, *v.* NORTHEAST OHIO HARNESS ET AL., APPELLANTS.

(No. 11195—Decided December 14, 1983.)

*Mr. Louis A. Tuzi,* for appellee.
*Mr. Glenn Waggoner,* for appellants.

BAIRD, J. Northeast Ohio Harness (Northfield Park) charges its harness racing patrons admission and parking fees. The village of Northfield ("village") imposes a tax on the patrons who pay these fees. The village brought this action to collect the taxes, and Northeast Ohio Harness resisted collection based on R.C. 3769.08. The trial court ruled in plaintiff's favor, and defendants appeal.

## Assignment of Error

"The trial court erred in entering judgment for Plaintiff rather than for Defendants, because Plaintiff's admission tax is unlawful with respect to Defendants' business by reason of the preemption of municipal taxing power contained in Section 3769.08 of the Ohio Revised Code."

In pertinent part R.C. 3769.08 provides:

"No other license or excise tax or fee, except as provided in sections 3769.01 to 3769.14 of the Revised Code, shall be assessed or collected from such licensee by any county, township, district, municipal corporation, or other body having power to assess or collect a tax or fee. * * *"

The licensee to which the statute refers is the holder of a permit to conduct a horseracing meeting. *Gochneaur* v. *Kosydar* (1976), 46 Ohio St. 2d 59, 61, fn. 1 [75 O.O.2d 142]. The statute uses the term "excise tax," which has been defined as follows:

"An 'excise tax' is one imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege; the term, it has been said, is sufficiently broad in meaning to include every form of taxation not a burden laid directly on persons or property. In slightly different language it is said that an excise tax is a tax assessed for some privilege or immunity granted to some artificial or natural person, based upon the grant of such privilege or immunity.

* * *" 51 Ohio Jurisprudence 2d (1962), 23, Taxation, Section 8.

Based upon the context in which "excise tax" is used in the statute, we believe that this was the meaning intended by the legislature. The issue before us, then, is whether the admission and parking taxes may be considered to be in the nature of license taxes on the permit holder. We conclude they may not.

The ordinance at issue provides:

"173.01 LEVY AND IMPOSITION.

"(a) There is hereby levied and imposed upon every person who pays an admission and/or parking charge for the right or privilege to enter: a theater; auditorium; dance hall, roller or skating rink; athletic field; swimming pool; outdoor amusement park; or the privilege of riding upon a machine which gives a ride; automobile or motorcycle race or contest; horserace meeting; meeting at which horse racing is conducted for any stake, purse or reward; horse show; circus; sideshow attraction; parking lot; or any other public exhibition or performance for profit, including a tax on persons who are admitted free of charge or at reduced prices to any place for which other persons pay a charge or a regular higher charge for the same or similar privileges or accommodations, within the Municipality of Northfield, a tax of five percent on the amount of money paid for the ticket, or the value of the right of admission thereto. This includes admissions by meet or season tickets, passes or subscriptions, whether paid for or not."

In *Bedford Sportspark, Inc.* v. *Leslie* (1959), 80 Ohio Law Abs. 124, the Summit County Court of Common Pleas concluded that R.C. 3769.08 did not prohibit a municipality from levying an admissions tax since the tax fell on the patron of the track rather than the permit holder. We affirmed that decision (*Bedford Sportspark, Inc.* v. *Leslie* [June 10, 1959], Summit App. No. 4883, unreported), and see no reason why its rationale should not be extended to taxes on parking fees. In ad-

dition to finding that the tax is not a tax on the permit holder under R.C. 3769.08, we also conclude that the tax is not a license fee.

Anyone who operates a horseracing meeting must have a license from the state. Once a state license is procured the holder needs no other license to operate its meetings. See *State, ex rel. McElroy*, v. *Akron* (1962), 173 Ohio St. 189 [19 O.O.2d 3]. The village, in this case, does not restrict the permit holder's right to conduct horseracing meetings or require the payment of any fees for that privilege. The village does tax any individual who pays an admission or parking fee, but this tax is unrelated to the privilege of conducting a horserace meeting. This distinction was recognized by the state legislature when it enacted a state-wide admissions tax which was separate and distinct from its license provisions. (G.C. 5544-1 *et seq.*, repealed 1947.) In discussing the charges a municipality may impose on watercraft owners without running afoul of the state's power to license, the Supreme Court observed:

"* * * As long as the charge imposed by the political subdivision is not in the nature of a license for the right or privilege of operating watercraft upon its waters, it is valid. * * *" *State, ex rel. McElroy*, v. *Akron, supra*, at 196.

The taxes at issue here are directed at all recreational activities which charge admission or parking fees, and we fail to see how such charges can be construed as in the nature of a license for the privilege of conducting a horseracing meeting. We conclude, therefore, that the taxes at issue do not violate R.C. 3769.08. Accordingly, the assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and GEORGE, J., concur.